ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Dec-30  13:53:21
60CV-21-8257
C06D16 : 22 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**BRYCE BREWER LAW FIRM, LLC**

       Plaintiff,

   v.

**REPUBLIC SERVICES, INC.; REPUBLIC
SERVICES ALLIANCE GROUP, INC.; and BFI
WASTE SERVICES, LLC**

       Defendants.

Case No.:

CLASS ACTION

### CLASS ACTION COMPLAINT

Plaintiff Bryce Brewer Law Firm, LLC files this Class Action Complaint against Defendants Republic Services, Inc., Republic Services Alliance Group, Inc., and BFI Waste Services, LLC (collectively "Republic" or "Defendants") on behalf of itself and all others similarly situated in Arkansas. In support thereof, Plaintiff states the following:

### I.    NATURE OF THE CASE

1.    Republic has engaged in a widespread and systematic practice of overcharging its customers through two separate, but related coordinated schemes: implementing unlawful rate increases and charging unlawful and excessive "Fuel Recovery Fees".

2.    Republic is one of the largest solid waste disposal companies in the United States, with some $950 million in annual revenue. Like thousands of other small businesses across the country, Plaintiff pays Republic for waste disposal pursuant to a standard, preprinted contract. Notably, this contract is uniform among putative class members in all relevant aspects and typically contains a multi-year term. The primary purpose of the form contract is to establish prices a given customer will pay Republic for waste pickup.

3.    In violation of the form contract and of Arkansas law—which governs all claims in

this litigation—Republic has carried out a systematic fraudulent scheme to charge its customers more than the agreed amounts.

4.      Republic enters into the agreements knowing that it will increase the promised prices without justification. The contracts specifically restrict Republic's ability to increase rates to five specific circumstances, only one of which is at issue in this case.[1] Specifically at issue here, Republic implements systematic rate increases purportedly "to adjust for any increase in…the Consumer Price Index for all Urban Consumers," but, which far out-strip the increases (if any) in the consumer price index ("CPI") and which are not—in intent or effect—made to adjust for increases thereto. These rate increases are imposed frequently and are significant in amount, often exceeding 50% over the course of a contractual term, and greatly exceed the increases in the consumer price index—or amounts needed to adjust for increases in CPI—which purportedly justify them.

5.      In addition to imposing automated, excessive rate increases on its customers, Republic has also increased prices by imposing a fee it calls a "Fuel Recovery Fee" but which, in fact, has no relationship to its actual or increased fuel costs. Rather, Republic uses this fee—in intent and effect—as a hidden price increase. The Fuel Recovery Fee bears absolutely no relation to Republic's actual or increased fuel costs and Republic does not use the proceeds from the Fuel Recovery Fee to offset such costs.  In fact, Republic includes any fuel costs it might incur in delivering its services through the standard rates it charges customers.  Republic simply uses the Fuel Recovery Fee to generate extra profit at its customers' expense, all the while deceiving customers into believing that the fee is a legitimate charge directly related to specific increased

---

[1] Any other increases can only be implemented with the affirmative "consent" of customers. Republic neither sought nor obtained consent here, as the increases at issue were purportedly made under the other provision of the contract, specified herein.

costs it incurs.

6.      Plaintiff, through the allegations set out herein, asserts that the Rate Increases and Fuel Recovery Fees are excessive (greater than Republic's related increased costs), and does not seek a full return of all Fuel Recovery Fees and Rate Increases at this time, but rather only seeks to refund the excessive amount above Republic's actual, quantifiable increased related costs (to the extent Republic can identify any such costs).

7.      Further, this case presents a prototypical situation for class treatment. Republic's conduct—including all relevant practices, conduct, and documents—is uniform among all customers.  The application of common law to an identical course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial. Additionally, Plaintiff brings a fraud claim based upon Republic's deceptive conduct on its own behalf, individually.

## II. JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Defendants. Defendants Republic Services Alliance Group, Inc. and BFI Waste Services, LLC are authorized to do business in Arkansas. All of the Defendant in fact do business in Pulaski County, Arkansas. The conduct of all of the Defendants at issue in this case in part originated and took place in Pulaski County, Arkansas—including the Defendants' conduct in charging and assessing the rate increases and fees—and Defendants could reasonably anticipate litigation in this County under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court under Arkansas Code § 16-60-101. Plaintiff's principal office is located in Pulaski County, Arkansas, and the conduct giving rise to Plaintiff's claims occurred in substantial part in this County.

3

### III.    PARTIES

10.    Bryce Brewer Law Firm, LLC is an Arkansas entity with its principal place of business in Pulaski County, Arkansas.

11.    Plaintiff's experience with Republic is typical of the classes in all relevant aspects. Plaintiff entered into a form contract with Republic.   Republic unilaterally and unlawfully implemented automated rate increases that affected Plaintiff on multiple occasions (in that Plaintiff paid the rate increases), none of which complied with the contractual terms.  Plaintiff was invoiced and paid multiple "Fuel Recovery Fees" to Republic within the statutory period while under the form contract. The direct and proximate result of these unlawful, deceptive, and unfair automated rate increases is that Plaintiff has been damaged by paying more than agreed.

12.    BFI Waste Services, LLC is a Delaware entity and Republic Services, Inc. and Republic Services Alliance Group, Inc.  are Delaware corporations. All of the Defendants have a principal address at 18500 North Allied Way, Phoenix, AZ 85054.   All do business in the state of Arkansas.

13.    Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Republic Services, Inc, Republic Services Alliance Group, Inc., and BFI Waste Services, LLC share management structure and financial accounting and any legal distinction between these entities is a fiction designed to limit liability. These entities were directly involved in—and responsible for—the conduct alleged herein. Upon information and belief, Republic Services, Inc. designed, implemented, charged, and collected the Fuel Recovery Fees and rate increases, which contribute directly to their profit margins. Generally, upon information and belief, Republic Services, Inc. assesses the fees and rate increases, determines the amount of the fees and rate increases, and invoices for and collects payment for the fees and rate

4

increases. BFI Waste Services, LLC, at Republic Services, Inc.'s direction, acts as the forward-facing entity upon contracting and provides services to Republic Services, Inc. Republic Services Alliance Group, Inc works as an intermediary in implementing the management decisions made by Republic Services, Inc. with subsidiaries like BFI Waste Services, Inc., including the decisions related to the rate increases and fees at issue. All management level decisions are made by Republic Services, Inc.

## IV.    FACTUAL ALLEGATIONS

14.    Republic is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $950 million in annual revenue.

15.    Plaintiff is a small business in Pulaski County, Arkansas. For its business, Plaintiff requires solid waste disposal services and, like thousands of other small businesses, it entered into a standardized agreement with Republic to provide these services.   This agreement is a long-term contract that primarily establishes a set rate for disposal services and which contains standardized language that governs it. The agreement also provides how Republic may be able to increase rates to pass through specific cost increases it incurs during the pendency and renewal terms of that contact.  And, like thousands of other small businesses, after locking Plaintiff into one of these long-term contracts, Republic systematically increased rates with no contractual justification and unilaterally imposed unlawful "Fuel Recovery Fees".

16.    First, Republic's systematic, automated rate increases do not—in intent or effect—adjust for increases in the discrete costs—specifically increases in the Consumer Price Index ("CPI")—identified in the uniform contractual provision that allows for them.  Rather, after entering into long-term, fixed-rate contracts, Republic carries out a deliberate scheme to repeatedly increase rates without contractual justification by amounts that far exceed any increases in CPI

5

that purportedly justify them or amounts needed to adjust for increases in CPI. Upon information and belief, it does so through a consistent, centralized automated rate increase process that was intended to glean tens of millions of dollars of unearned profit from its customers. This conduct breaches the form contract.

17. Second, the fees Republic calls "Fuel Recovery Fees," are not, in fact, related to Republic's increased or actual fuel costs at all. They are not charged—or intended—to recover increased or actual fuel costs and such costs are regardless recovered through other pricing and fee mechanisms. Republic's charging of these Fuel Recovery Fees is deceptive and Republic is unjustly enriched by its collection of those fees.

**A.   The Standardized, Uniform Language At Issue.**

18. Republic used effectively standardized "customer service agreements" to contract with customers regardless of location. Every putative class member entered into such an effectively identical form contract. All relevant terms are pre-printed by Republic, including the uniform "Rate Adjustments" provision that governs the rate increases at issue in this litigation.

19. This Rate Adjustments provision allows for Republic to pass-through specific, discrete increases in costs it may incur in providing services to customers. Specifically, it states Republic:

> may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in: (a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customer's Waste Materials above the number of pounds per cubic yard upon which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) Company's costs due to changes in Applicable Laws.

20. Thus, under the express terms of this provision, Republic may implement rate increases to adjust for "increases" to the five identified areas of discrete external costs, only one

of which—increases in the Consumer Price Index—is at issue here. Republic purportedly implements rate increases to adjust for increases in the Consumer Price Index through systematic, automated rate increases uniform among its customers.

21.     Aside from establishing the fixed rate for service and the limited manner in which Republic may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a term of at least one year, (b) integrate the contract, and (c) allow Republic punitive remedies including suspension, the payment of fees, and the payment of future amounts—up to six months—that Republic maintains are due under the contract in the event a customer fails to pay any amount or wishes to terminate.

**B.      Republic's Unlawful, Unilateral Rate Increase Practice.**

22.     Republic violates the form contract by systematically increasing rates by more than increases in the Consumer Price Index and by amounts that do not "adjust for", but rather exceed, any such increases.

23.     Republic has carried out a systematic and deliberate practice of repeatedly increasing rates in excess of any adjustment for increases in the Consumer Price Index. Republic induces customers into entering into form contracts with fixed rates while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing rates by more than allowed by contract.

24.     Republic unilaterally imposes automated increases at least annually, and often more frequently. Upon information and belief, these rate increases are directed by Republic's corporate officers as part of a broad strategy to increase profit and are carried out through an automated process using Republic's customer relationship management system.

25.     The amount of the rate increases varies, but are significant, and can result in

7

customers paying more than 50% more than agreed by the end of an agreement term. Each increase Republic imposed on class members exceeds increases, if any, in the increases in the Consumer Price Index that would allow them under the contract and exceeds increases needed to adjust for these amounts, and the totality of such increases similarly far out-strip increases in the Consumer Price Index over any given time period. Upon information and belief, based upon investigation, Republic imposed rate increases identical in timing, methodology, and intent (and similar if not identical in percentage) across most of its customer base in Arkansas each year during the relevant time period.

26.    These unilateral automated rate increases violate the form contractual language that governs them and is present in every contact at issue, because they exceed any Consumer Price Index increases—or increases needed to adjust for them—that could possibly justify them. They are simply mechanisms by which Republic increases its profits. There is no legal justification for Republic's practice of unilateral, systematic rate increases.   Republic knows when it presents contracts for fixed rates, that it will inflate these rates precipitously and continually. Republic's practices breach the form contractual language it entered into with Plaintiff and other small businesses across Arkansas, and has resulted in it being unjustly enriched at its customers' expense. As a direct result of its unlawful rate increase conduct, Republic has wrongfully taken thousands of dollars from its customers in Arkansas over the statutory period.

27.    Additionally, Republic's conduct toward Plaintiff in relation to the rate increases constitutes fraud. Through representations made by Republic on the contract, invoices, and other documents, Republic represented that rate increases or "Rate Adjustments" would be made "to adjust for any increase in" the Consumer Price Index. Republic made these representations in the contract presented to Plaintiff on July 30, 2015—through the exact language quoted above.

8

Republic Services, Inc. represented that these contractual limitations on rate increases would be followed through language on its website referenced on every invoice to Plaintiff. Republic reiterated that "If your service is subject to a written contract (or other written agreement applicable to your service), your rate increase will comply with any limitations set forth in such contract, if any." This representation reinforced that rate increases would be limited to those needed to adjust for increases in the Consumer Price Index.

28.     These representations were false. As set out above, the rate increases Republic imposed were not made with any relationship to increases in the discrete cost areas—in this case CPI—that were identified by the contract. These representations concerned a material fact. The increases are significant and can amount to a 50% increase in a contractual term. If Plaintiff had known that it would be paying substantially more than agreed based upon rate increases that were not implemented to adjust for increases in the specifically-identified CPI, it would not have agreed to the contract or paid the rate increases.

29.     Plaintiff justifiably relied upon these representations. It justifiably believed that Republic would implement rate increases, and appropriately determine the amount of such increases, in order to adjust for increases in the CPI. Republic did not disclose its methodology in increasing the rates. Further, Plaintiff reasonably believed that any rate increases were pursuant to the contractual provision limiting them to use as adjustments for increases in the CPI. Plaintiff was damaged in that it paid increased rates as a result of rate increases, the purposes and calculations of which were misrepresented.

30.     At the time they made these representations, Republic knew that the representations were false; namely, they never intended to increase rates in order to adjust for increases in the CPI. Further, the intent of Republic was to induce Plaintiff's action—entering into the agreement and

paying the fee—in reliance of their representations. They each intended to lock Plaintiff into the contract on the representation that it would implement rate increases in accordance with their representations with the intent to deceive when, in reality, it intended to arbitrarily increase rates solely based on its objective of increasing profits. Similarly, Republic intended to induce Plaintiff with the use of the language on its website, incorporated into the invoices, that rate increases would be implemented based on the limitations in the written contracts when, in reality, Republic did not intend to implement the rate increases in accordance with those provisions.

      **C.**    **Republic's Unlawful "Fuel Recovery Fees."**

      31.    Republic charges its customers a fee it calls a "Fuel Recovery Fee." It does so, purportedly, to recover increased or actual fuel costs it incurs in providing services to customers in accordance with the uniform representations it makes to customers through language on its website which is referenced on invoices. This fee is a percentage of all the invoice charges and is significant in amount, reaching over 25% or hundreds of dollars a month for some customers. Republic periodically increases the percentage of the "Fuel Recovery Fee," but, upon information and belief, has never decreased this percentage.

      32.    The "Fuel Recovery Fee" is in no way related to Republic's fuel costs it incurs. The "Fuel Recovery Fee" is not charged to defray those increased costs. Republic does not apply the money received from the "Fuel Recovery Fee" to offset any such increased costs; rather, it is recognized as revenue and contributes directly to Republic's profit. Republic has not—during the relevant period—experienced any increased "fuel costs," particularly on a per-customer basis, as it enters into fixed-price fuel purchase contracts.

      33.    Republic did not design the "Fuel Recovery Fee" to "recover" any increased or actual fuel costs it incurs. The method by which Republic determines the "Fuel Recovery Fee" has

no relation to its increased or actual fuel costs or to any changes in those costs. It is arbitrary in that the only driving factor is the profit Republic seeks to derive from this fee while maintaining the false appearance of the fee as a legitimate charge related to specific, discrete costs. Republic has done no legitimate analysis to determine the proper amount of the "Fuel Recovery Fee" in connection to its increased or actual fuel costs.

34.     Indeed, the "Fuel Recovery Fee" does not fluctuate in any way with Republic's fuel or material costs and has increased while its per-customer fuel costs have decreased. For example, the "Fuel Recovery Fee" charged has increased at the same time that fuel costs decreased.

35.     Additionally, Republic already fully recovers any fuel costs that purportedly justify this fee through the base rate it charges customers and increases to that rate. These rates include the individual component costs of Republic's business, including—specifically—the costs of fuel, materials, and other overhead. When setting and increasing rates, Republic takes into account its fuel costs to recover such costs, and the "Fuel Recovery Fee" is wholly unlawful as it does not reflect any fuel costs that are not already recovered. As such, Republic has been unjustly enriched by collecting deceptive Fuel Recovery Fees.

36.     Additionally, Republic's conduct toward Plaintiff constitutes fraud. Through representations made by Republic on invoices and other documents, Republic represented that the "Fuel Recovery Fee" was related to, and designed to recover, its actual or increased fuel costs. It represented this to Plaintiff in contractual documents, including July 30, 2015. By naming the fee a "Fuel Recover Fee," Republic represented that the fee it charged would be related to its fuel costs. It made similar representations on each invoice, referring to the Fee as a "Fuel Recovery Fee." This was included in every invoice to Plaintiff. On these same invoices, Republic referenced its website that contains language regarding the "Fuel Recovery Fee." This page has been in

existence since August 2013. Therein Republic Services, Inc. represented that the "Fuel Recovery Fee" "is intended to help Republic Services recover both direct and indirect fuel, ... costs associated with the operation of its collection, transfer, landfill and recycling services and facilities nationwide ...". The representations on the website have been in existence since at least 2013.

37.     All of these representations were false. As set out above, the "Fuel Recovery Fee" is wholly unrelated to Republic's actual or increased fuel costs, rendering Republic's representations that it is related to such costs, false. This was a material fact. The Fee can be significant, exceeding $100 per invoice. If Plaintiff had known that it was paying substantial sums for a fee—rather than being designed and used to defray Republic's fuel costs—simply acted as a profit-enhancement tool for Republic, it would not have agreed to the contract or paid the fees.

38.     Plaintiff justifiably relied upon these representations. It justifiably believed that the manner in which Republic would determine the Fuel Recovery Fee would bear a relationship to its actual or increased fuel costs. Even to the extent Republic disclosed its methodology for determining the amount of the Fuel Recovery Fee, Plaintiff justifiably believed that—based upon Republic's representations—the methodology would yield an amount that would be related to its fuel costs. Plaintiff was damaged in that it was invoiced and paid for an excessive and fraudulent Fuel Recovery Fee.

39.     At the time that they made these representations, Republic knew that the representations were false; namely, it never intended to charge a Fuel Recovery Fee that was related to its fuel costs as represented. Further, the intent of Republic was to induce Plaintiff's action—entering the agreement and paying the fee—in reliance on the representations. They each intended to lock Plaintiff into the contract on the representation that the "Fuel Recovery Fee" with the intent to induce Plaintiff into believing this when, in reality, the "Fuel Recovery Fee" was

12

nothing but a profit mechanism. Similarly, Republic intended to induce Plaintiff with the use of the language on its website, referenced on invoices, that it was charging a fee intended to recover its actual or increased fuel costs to keep Plaintiff from discovering that, in reality, the "Fuel Recovery Fee" bore no relation to its actual or increased fuel costs.

**D.      Neither Plaintiff, Nor Any Putative Class Member, Had Full Knowledge Of The "Fuel Recovery Fee" Or Rate Increases, Nor Did They Consent To Any Such Fees Or Increases**

40.      No putative class member, including Plaintiff had full knowledge of the facts pertaining to the rate increases or the "Fuel Recovery Fee" such that would allow them to realize or act on their legal claims.

41.      Republic ensures that no customer can discover the true nature and illegality of the rate increases. For example, Republic does not disclose the methodology—or lack thereof—that purportedly justifies the increase, how it is purportedly calculating CPI, from what baseline, or when in will impel such increases. Without such information, no customer could determine the illegality of a given rate increase imposed by Republic. No customer, including Plaintiff, had the knowledge or notice for them to have "consented" or "voluntarily paid" the rate increases.

42.      Republic further ensures that customers cannot discover the true nature, purpose, and use of the "Fuel Recovery Fee."  Republic uniformly uses this term to charge this fee to Plaintiff and putative class members.  It does so consistently and continually, including every time it assesses the fee on monthly invoices.  Republic chose this term for a reason: it has a common, understood meaning for any reasonable consumer, including for Plaintiff and putative class members, and indicates that it is a fee charged to recover fuel costs incurred by Republic is related to such costs, and is used to offset or recover such costs, as implied by the common understood meaning.

13

43.     By using this fee term—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Republic deliberately misled Plaintiff and putative customers as to the nature, purpose, and use of the "Fuel Recovery Fee." Republic also omitted material facts regarding the "Fuel Recovery Fee," including that it is not related to any actual or increased fuel costs that Republic has and that Republic's fuel costs are not used to set the fee. Republic does not disclose that its methodology bears no relationship to its actual or increased fuel costs through the percentage it chooses to charge.

44.     Further, Plaintiff and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Republic. Republic uniformly represented that the rate increases and "Fuel Recovery Fees" were amount due under the contract which the customer had no choice but to accept under the terms of the contract. Upon information and belief, Republic enforces its form contracts—including punitive provisions for attorneys' fees and future due amounts—to ensure that customers cannot escape them, even if such customers could have known that the "Fuel Recovery Fees" and rate increases were unlawful and deceptive.

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action pursuant to Arkansas Rules of Civil Procedure Rule 23, and proposes the following classes:

**The Rate Increase Class:** All entities who reside in Arkansas who entered into a written contract with Republic that provides "Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in: (a) disposal costs; (b) transportation costs due to a change in location of Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Consumers; (d) the average weight per cubic yard of Customer's Waste Materials above the number of pounds per cubic yard upon

14

which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) Company's costs due to changes in Applicable Laws" and who paid rates to Republic in excess of those originally listed in the written contract from June 1, 2020 to the present.

**The "Fuel Recovery Fee" Class:** All entities who reside in Arkansas who, from June 1, 2020 to present, paid Republic a "Fuel Recovery Fee."

46.     Excluded from the proposed classes are customers who entered into a contract which contains an arbitration provision or class waiver.

47.     Also excluded from the proposed classes are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

48.     As used in these class definitions, "Republic" means BFI Waste Services, LLC, Republic Services Alliance Group, Inc., Republic Services, Inc., and all related entities, predecessors, subsidiaries, affiliates, and parent companies.

49.     As used in these definitions, "Fuel Recovery Fee" includes this fee regardless of the nomenclature used to charge it.

50.     Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

**A.     Existence And Predominance Of Common Questions Of Law And Fact.**

51.     Republic engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct— imposing "Fuel Recovery Fees" and rate increases that were unlawful and excessive—effected

15

class members in the exact same manner.  The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Republic's common conduct.  A single, uniform, pre-printed contract will govern all class members' contractual claims.  Extraneous contractual evidence is prohibited by a form integration clause.

52.    This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist.  Such common questions include, but are not limited to, the following:

a.    Whether Republic used standard form contracts with customers;

b.    Whether Republic imposed rate increases on putative class members who entered into the standard contract;

c.    Whether Republic's standard contract only allowed Republic to increase rates to adjust for increases in the specifically identified categories of costs;

d.    Whether Republic's rate increases exceeded any adjustments for increases in the specific costs which could support them under the contract;

e.    Whether Republic's rate increases were intended to adjust for increases in the CPI;

f.    Whether the rate increases Republic enacted were not in good faith;

g.    Whether the rate increases Republic enacted resulted in it being unjustly enriched;

h.    Whether Republic assessed "Fuel Recovery Fees" to customers;

i.    Whether the "Fuel Recovery Fee" Republic imposes is designed or intended to recover Republic's actual or increased fuel costs;

j.    Whether Republic has any increased fuel costs;

k.    Whether Republic recovers the same costs which purportedly justify the "Fuel

16

Recovery Fee" through other means, including base rates and increases to such rates;

l.      Whether Republic uses revenue from the "Fuel Recovery Fee" to offset its fuel costs;

m.      Whether the "Fuel Recovery Fees" exceed any fuel costs Republic may incur;

n.      Whether Republic has been unjustly enriched by the "Fuel Recovery Fees."

**B.      Numerosity.**

53.      The total number of members of each putative class is so numerous that individual joinder is impracticable. Republic has hundreds of customers in Arkansas who entered in the form contract and paid the "Fuel Recovery Fee" and rate increases.

**C.      Typicality.**

54.      The claims of the named Plaintiff are typical of the claims of the classes. Plaintiff, like other class members, entered into the form contract, paid rate increases that were not legally justified and paid unlawful "Fuel Recovery Fees." Plaintiff was subject to, and harmed by, the exact same common policies and practices which effected all class members.

**D.      Adequacy.**

55.      Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

17

**E.    Superiority and Manageability.**

56.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is considerable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Republic. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Rate Increase Class)

57.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

58.    Plaintiff and each member of the Rate Increase Class entered into standardized agreements with Republic which contain identical relevant contractual language.

59.    Plaintiff and each member of the class performed on their agreements, including by paying Republic for services.

60.    As set out herein, through its practice of unilaterally increasing rates by more than allowed under the contract, specifically the "Rate Adjustments" provision referring to increases

based upon increases to CPI, Republic breached the agreements.

61.    Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Republic's breach of contract in that each paid more than allowed by contract.

## COUNT II
## UNJUST ENRICHMENT
### (Rate Increase Class)

62.    All allegations and paragraphs in this complaint, aside from other counts, are incorporated by reference.

63.    To the extent necessary, this count is plead in the alternative.

64.    Through its rate increase practices, Republic was unjustly enriched. Through the payment of money that was attributable to rate increases, Republic knowingly accepted and retained something of value. By paying that money, Plaintiff and class members provided that value. By imposing rate increases which it knew to be not justified by any related increase in CPI, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Republic's retention of the benefit would be unjust. In equity and good conscience, Republic ought not retain the excess money paid by Plaintiff and the class members.

65.    Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Republic's conduct in that each paid more for products and services than they rightfully owed.

## COUNT III
## UNJUST ENRICHMENT
### ("Fuel Recovery Fee" Class)

66.    All allegations and paragraphs, aside from other counts, in this complaint are

incorporated by reference.

67.     Through its practices in charging "Fuel Recovery Fees," Republic was unjustly enriched. Through the payment of money for the "Fuel Recovery Fees," Republic knowingly accepted and retained something of value. By paying that money, Plaintiff and class members provided that value. By charging the arbitrary "Fuel Recovery Fees," by suppressing and misrepresenting material facts (including that it would charge a "Fuel Recovery Fee" that was not intended as represented), and by engaging in other wrongful and unlawful conduct as set out herein, Republic's retention of the benefit would be unjust. In equity and good conscience, Republic ought not retain the excess money paid by Plaintiff and the class members

68.     Plaintiff and each member of the "Fuel Recovery Fee" Class have been directly and proximately harmed by Republic's conduct in that each paid excessive, deceptive, and unlawful "Fuel Recovery Fees."

## COUNT IV
### Fraud In Charging The "Fuel Recovery Fee"
### (On Behalf Of Plaintiff Individually)

69.     All allegations and paragraphs, aside from other counts, in this complaint are incorporated by reference.

70.     To the extent necessary, this count is plead in the alternative.

71.     The conduct of Republic related to the "Fuel Recovery Fee" toward Plaintiff constitutes fraud. As set out above, Republic made material representations about the nature of the "Fuel Recovery Fee" in the contract, invoices, and language on Republic's website incorporated into the invoices.

72.     Plaintiff justifiably relied upon these representations in entering the contract and paying the "Fuel Recovery Fees." These representations were false. The "Fuel Recovery Fee" is

not intended to recover Republic's fuel costs and it bears no relation to such costs. Republic Services, Inc., Republic Services Alliance Group, Inc, and BFI Waste Services, LLC knew them to be false at the time they made them, and they were made with the intent to induce Plaintiff to act—in entering the agreement and paying the fee—in reliance on the representations that the "Fuel Recovery Fee" was legitimate, bore a relationship to Republic's fuel costs, and was used to recover such costs.

73.     Plaintiff was damaged in that it paid the fraudulent "Fuel Recovery Fees" as a result of its reliance on Republic's intentional, material misrepresentations.

## COUNT V
### Fraud In Imposing Unlawful Rate Increases
### (On Behalf Of Plaintiff Individually)

74.     All allegations and paragraphs, aside from other counts, in this complaint are incorporated by reference.

75.     To the extent necessary, this count is plead in the alternative.

76.     The conduct of Republic related to the rate increases implemented constitutes fraud. As set out above, Republic made material representations about the nature of the rate increases that it would charge in the contract, invoices, and language on Republic's website referenced on the invoices.

77.     Plaintiff justifiably relied upon these representations in entering the contract, renewing the contract, and paying the extra amounts in rate increases. These representations were false. The rate increases implemented during the time period at issue were not intended, and did not, adjust for increases in the specifically-identified CPI increases in the contract. Republic Services, Inc., Republic Services Alliance Group, Inc., and BFI Waste Services, LLC knew them to be false at the time they made them and they were made with the intent to induce Plaintiff to

act—in entering the agreement and paying the increased rates—in reliance on the representations that the rate increases would be made as set out in the contract.

78.   Plaintiff was damaged in that it paid the extra amounts in the form of rate increases as a result of its reliance on Republic's intention, material misrepresentations.

## VII.   PRAYER FOR RELIEF

79.   Plaintiff seeks a refund of all excessive Fuel Recovery Fees and Rate Increases paid by entities in Arkansas to Republic from June 1, 2020 to present. Plaintiff does not seek attorney's fees or punitive damages.

### Trial By Jury

Plaintiff and the Classes are entitled to, and demand, a trial by jury.

Respectfully submitted,

JOE A. DENTON
JUSTIN C. ZACHARY
DENTON & ZACHARY, PLLC
2100 Riverdale Road
Suite 200A
Little Rock, AR 72202
Phone: 501.358.4999
Fax: 501.358.4737
joe@dentonandzachary.com
justin@dentonandzachary.com
*Attorneys for Plaintiff*