IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BRYCE BREWER LAW FIRM, LLC**                                                           **PLAINTIFF**

v.                                    Case No. 4:22-cv-00120-KGB

**REPUBLIC SERVICES, INC.,** *et al.*                                                    **DEFENDANTS**

**ORDER**

Before the Court is defendant BFI Waste Services LLC's ("BFI") motion for entry of judgment or, in the alternative, for conditions upon plaintiff Bryce Brewer Law Firm, LLC's ("Bryce Brewer") voluntary dismissal (Dkt. No. 18). Bryce Brewer filed a notice stating that its complete response to BFI's motion for entry of judgment is found in its earlier response in opposition to BFI's motion for entry of judgment dated March 24, 2022, at pages 6-9 (Dkt. No. 78, at 1 (citing to Dkt. No. 27, at 6-9)). BFI replied in support of its motion for entry of judgment (Dkt. No. 82). Also before the Court is BFI's motion to dismiss Bryce Brewer's amended complaint (Dkt. No. 21). Bryce Brewer filed a response in opposition to BFI's motion to dismiss (Dkt. No. 77). BFI replied in support of its motion to dismiss (Dkt. No. 81). With the Court's permission, Bryce Brewer filed a surreply to BFI's motion to dismiss (Dkt. No. 85). For the reasons set forth below, the Court denies without prejudice BFI's motion for entry of judgment, or, in the alternative, for conditions upon Bryce Brewer's voluntary dismissal and denies BFI's motion to dismiss Bryce Brewer's amended complaint (Dkt. Nos. 18, 21).

**I.     Background**

Bryce Brewer filed its class action complaint on December 30, 2021, in the Circuit Court of Pulaski County, Arkansas (Dkt. No. 2). In the complaint, Bryce Brewer asserts that it paid defendants BFI, Republic Services, Inc. ("RSI"), and Republic Services Alliance Group, Inc.

("RSAGI") (collectively "Defendants") for waste disposal pursuant to a standard contract that is uniform among putative class members and contains a multi-year term (*Id*., ¶ 2).  Bryce Brewer maintains that, in violation of the form contract and Arkansas law, Defendants have "carried out a systematic fraudulent scheme to charge [their] customers more than the agreed amounts." (*Id*., ¶ 3).  Bryce Brewer complains that Defendants "enter[ed] into the agreements knowing that [they] will increase the promised prices without justification." (*Id*., ¶ 4).  According to Bryce Brewer, Defendants "implement[ed] systematic rate increases 'to adjust for any increase in . . . the Consumer Price Index ["CPI"] for all Urban Consumers,' but, which far out-strip the increases (if any) in the [CPI]" (*Id*.).  Bryce Brewer contends the rate increases are imposed frequently and are significant in amount, "often exceeding 50% over the course of a contractual term, and greatly exceed the increases in the [CPI]—or the amounts needed to adjust for increases in CPI—which purportedly justify them." (*Id*.).

On February 9, 2022, Defendants removed the case to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) (Dkt. No. 1).  At the time of removal, Defendants asserted that the amount in controversy exceeded $7 million (Dkt. No. 1, ¶ 8).  BFI answered the original complaint (Dkt. No. 5).  Specially appearing defendants RSI and RSAGI filed motions to dismiss the original complaint for lack of personal jurisdiction (Dkt. Nos. 6; 8).  BFI filed a motion for summary judgment as to the original complaint (Dkt. No. 10).

On March 8, 2022, Bryce Brewer filed its first amended class action complaint (the "operative complaint") (Dkt. No. 17).  Two days later, BFI moved for entry of judgment or, in the alternative, for conditions upon Bryce Brewer's voluntary dismissal (Dkt. No. 18).  BFI also moved to dismiss the operative complaint (Dkt. No. 21).  Specially appearing defendants RSI and RSAGI moved to dismiss the operative complaint for lack of personal jurisdiction under Federal

Rule of Civil Procedure 12(b)(2) and, in the alternative, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 23; 25).

Bryce Brewer filed unopposed motions for extension of deadlines to respond to pending motions stating that the parties had an agreement to exchange informal discovery relevant to subject matter jurisdiction and to enter into a protective order (Dkt. Nos. 16; 20; 30). The Court granted the unopposed motions for extension of deadlines in an Order dated April 5, 2022 (Dkt. No. 32). The Court stayed the deadlines for Bryce Brewer to respond to the Defendants' pending motions until after the parties conducted informal discovery on subject matter jurisdiction (*Id.*).

On September 14, 2022, the Court held a telephone conference with the parties at which time it heard arguments on Bryce Brewer's motion to compel (Dkt. No. 52). In an Order dated September 16, 2022, the Court denied Bryce Brewer's motion to compel (Dkt. No. 55, at 7). The Court denied as moot RSI and RSAGI's motions to dismiss and BFI's motion for summary judgment that were filed before the filing of the operative complaint (*Id.*).

On October 25, 2022, Bryce Brewer filed its motion to remand, which the Court denied in an Order dated March 7, 2023 (Dkt. No. 57, 72). In the Order denying the motion to remand, the Court lifted the stay (Dkt. No. 72). On March 30, 2023, the Court entered an Order adopting Bryce Brewer's notice of dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) of defendants RSI and RSAGI (Dkt. No. 76). In the same Order, the Court denied as moot RSI and RSAGI's motions to dismiss (*Id.*).

**II.    Analysis**

    **A.    BFI's Motion For Entry Of Judgment Or, In The Alternative, For Conditions Upon Plaintiff's Voluntary Dismissal**

BFI moves under Federal Rule of Civil Procedure 54(a) for entry of a judgment in its favor on all claims asserted by Bryce Brewer in its original complaint (Dkt. No. 18). Alternatively, BFI

3

asks the Court, under Federal Rule of Civil Procedure 41(a)(2), to condition dismissal of Bryce Brewer's original claims on Bryce Brewer's payment of BFI's attorneys' fees (Dkt. Nos. 18; 19, at 2).  BFI asserts that the parties' contract entitles BFI to an award of its fees, and the Court should condition Bryce Brewer's dismissal of its original claims against BFI on Bryce Brewer's payment of BFI's attorneys' fees (Dkt. No. 19, at 3 (citing Dkt. No. 12-1, at 6)).

In its response, Bryce Brewer contends that Federal Rule of Civil Procedure 41(a) does not apply to this situation because it did not seek dismissal of claims under Rule 41, but rather Bryce Brewer amended its complaint as a matter of right under Federal Rule of Civil Procedure 15.  Bryce Brewer maintains that Rule 41(a) "only applies to dismissals of all claims against a particular defendant, not to dismissals of less than all claims against that defendant." (Dkt. No. 27, at 6 (quoting *ECASH Techs., Inc. v. Guagliardo*, 35 F. App'x 498, 49 (9th Cir. 2002)).  According to Bryce Brewer, because it continues to assert claims against BFI in the operative complaint and is not seeking to dismiss the action, Rule 41 does not apply, and there is no basis for BFI to request dismissal (*Id.*, at 7).  Further, Bryce Brewer contends that there is no basis to award costs and fees (*Id.*, at 7-8).

BFI replied in support of its motion for entry of judgment asserting that there is "no reason to wait to enter judgment on the claims against BFI that Plaintiff attempted to dismiss by excluding them from its amended complaint" (Dkt. No. 82, at 1).  Further, BFI contends that it is "prejudiced by dismissal because it has an existing and ripe contractual right to recover fees incurred defending against Plaintiff's original claims." (*Id.*, at 2).

The Court denies without prejudice at this time BFI's motion for entry of judgment or, in the alternative, for conditions upon Bryce Brewer's voluntary dismissal (Dkt. No. 18).  Bryce Brewer's amended complaint is the operative complaint.  Bryce Brewer's filing of the operative

4

complaint mooted RSI and RSAGI's motions to dismiss as well as BFI's motion for summary judgment (Dkt. No. 55, at 5). Accordingly, the Court will not award BFI judgment under Rule 54 on its motion for summary judgment. If BFI continues to maintain that it is entitled to attorneys' fees as a prevailing party under the contract on the claims raised by Bryce Brewer in its original complaint or any other claims, it may raise the issue at the conclusion of the lawsuit for the Court's consideration at that time.

### B. Motion To Dismiss

BFI moves to dismiss Bryce Brewer's operative complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 21). BFI argues that the Customer Service Agreement entered into between Bryce Brewer and BFI in July 2013 authorizes the "rate adjustments" Bryce Brewer challenges in the operative complaint (Dkt. No. 22, at 1). Bryce Brewer responds in opposition to BFI's motion to dismiss arguing that Bryce Brewer did not consent to any price increases and the United States Court of Appeals for the Eighth Circuit has rejected BFI's argument that it consented by paying BFI's invoices (Dkt. No. 77, at 5-8). Bryce Brewer also contends that, to the extent that BFI is arguing that Bryce Brewer's operative complaint should be dismissed because Bryce Brewer paid "price increases that *might* be for a purported reason other than to offset CPI," this argument ignores the clear allegations of the operative complaint. (Dkt. No. 77, at 8-9). BFI replies in support of its motion to dismiss claiming that, because Bryce Brewer voluntarily dismissed its claims against two defendants RSI and RSAG, its breach of contract claim cannot survive against BFI, which claim requires the presence of RSI (Dkt. No. 81, at 1). Bryce Brewer filed a surreply to respond to BFI's reply (Dkt. No. 85).

### 1. Background

According to the operative complaint, RSI is one of the largest waste disposal companies in the United States, with millions of customers, locations in forty-one states, and over $950 million in annual revenue (Dkt. No. 17, ¶ 17). Bryce Brewer is a small business that entered into a standard agreement for solid waste disposal with RSI (*Id*., ¶ 18). Although Bryce Brewer contracted with RSI, RSI stated in its motion to dismiss the operative complaint that BFI set Bryce Brewer's rates and negotiated with Bryce Brewer (Dkt. No. 24, at 2). RSI asserts that it "does not have any contractual relationship with Bryce Brewer or with any other Arkansas consumer" but is the holding company for BFI (*Id*., at 2, ¶ 1). RSI maintains that "neither Bryce Brewer nor any other Arkansas consumer has paid RSI any rate for waste hauling services." (*Id*., at 2-3, ¶ 1). According to RSI, BFI "is the entity that contracted with Plaintiff." (*Id*., at 3, ¶ 2). BFI supports this assertion by repeatedly acknowledging in its motion to dismiss and brief supporting its motion to dismiss that Bryce Brewer's "sole claim is for breach of contract . . . between Bryce Brewer and BFI" based on allegations that "BFI wrongfully adjusted rates under a Customer Service Agreement." (Dkt. Nos. 21; 22, at 1).

In the operative complaint, Bryce Brewer challenges what it alleges is BFI's practice of unlawfully increasing rates that are not related to, or used to offset, any of the costs which purportedly justify the rate increases (Dkt. No. 17, ¶ 19). Bryce Brewer's claims center on a form contract which BFI used with commercial and industrial customers (*Id*., ¶¶ 20-23). Bryce Brewer required solid waste disposal services for its business and entered into the form contract, called a "Customer Service Agreement," at issue with BFI for services (*Id*., ¶ 18). The Customer Service Agreement is long-term and sets out the rates for the term of the contract (*Id*.). While the Customer Service Agreement limits BFI's ability to increase rates to five specific circumstances, Bryce

Brewer's allegations in the operative complaint concern only one specific type of rate increase—those made to adjust for increases in the Consumer Price Index ("CPI") (*Id.*, ¶ 22).

The entire "Rate Adjustment" paragraph in the Customer Service Agreement provides:

> **RATE ADJUSTMENTS.** Company may, from time to time by notice to Customer, increase the rates provided in the Agreement to adjust for any increase in (a) disposal costs; (b) transportation costs due to a change in the location of the Customer or the disposal facility used by Company; (c) the Consumer Price Index for all Urban Customers; (d) the average weight per cubic yard of Customer's Waste Materials above the number of pounds per cubic yard upon which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) Company's costs due to changes in Applicable Laws. Company may increase rates for reasons other than those set forth above with Customer's consent, which may be evidenced verbally, in writing or by the parties' actions and practices.

(Dkt. No. 22, ¶ 2 (citing Dkt. No. 12-1, at 6)).

In the operative complaint, Bryce Brewer alleges that the specific rate increases imposed on Bryce Brewer were "mandatory CPI increases and not increases to which customers can consent" (Dkt. No. 17, ¶ 30). Further, in the operative complaint Bryce Brewer asserts that it is challenging the rate increases that it "had no choice but to accept under the terms of the contract." (*Id.*, ¶ 32). According to the operative complaint, if customers like Bryce Brewer did not pay the invoiced charges, BFI would aggressively enforce the contract seeking future due amounts and attorney's fees (*Id.*).

### 2.  Breach Of The Customer Service Agreement

BFI moves to dismiss Bryce Brewer's breach of contract claim as a matter of law (Dkt. No. 22). "[I]n order to state a cause of action for breach of contract [under Arkansas law] the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and the defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*,

436 S.W.3d 445, 450 (Ark. 2014) (citing *Perry v. Baptist Health*, 189 S.W.3d 54, 58 (Ark. 2004)). "When performance of a duty under a contract is contemplated, nonperformance of that duty is a breach." *Cozart v. Logue*, 447 S.W.3d 133, 136 (Ark. Ct. App. 2014).

BFI maintains that Bryce Brewer's breach of contract claim fails because it has not shown and cannot show that any rate adjustment violated the Customer Service Agreement. According to BFI, in addition to listing five enumerated reasons that allow BFI to adjust rates under the Customer Service Agreement, four of which BFI asserts that Bryce Brewer ignores, BFI argues that "the Customer Service Agreement also provides that BFI can increase rates for 'reasons other than those set forth above' so long as the customer indicates consent to the increased rates 'verbally, in writing, **or by the parties' actions and practices.**'" (Dkt. No. 22, at 1 (emphasis in original)), 4-5). BFI points out that the Customer Service Agreement does not limit rate adjustments to increases in the CPI (*Id.*, at 5). Further, BFI contends that Bryce Brewer admits in its operative complaint that it paid the rate increases on multiple occasions (*Id.*, at 5 (citing Dkt. No. 17, ¶ 10)). BFI asserts, even if the rate increases did not correspond to the CPI, that is of no consequence because the Customer Service Agreement permitted BFI to make rate adjustments for four other enumerated reasons with Bryce Brewer's consent, and Bryce Brewer affirmatively alleges that it paid the rate adjustments, thereby "manifestly assenting to them," having knowingly and voluntarily paid them for years (*Id.*).

Bryce Brewer responds in opposition to BFI's motion to dismiss and asserts its claims are well-pled (Dkt. No. 77). Bryce Brewer maintains that BFI's affiliates raised its argument that, by paying the mandatory rate increases, customers consented to the rate increases in an identical case pending in the Eastern District of Missouri (Dkt. No. 77, at 4-5 (citing Dkt. No. 77-1, at 7-8)). The Eastern District of Missouri granted the motion to dismiss, but the United States Court of Appeals

for the Eighth Circuit reversed. *See Pietoso, Inc. v. Republic Services, Inc.*, 4 F.4th 620, 621 (8th Cir. 2021).

In *Pietoso*, the language in the agreement was identical to the language in the Customer Service Agreement at issue here (Dkt. No. 77-1, at 7). In both cases, plaintiffs assert that they experienced rate increases that were not presented as optional but were instead presented as mandatory price increases under the form contract (Dkt. No. 17, ¶ 28). *Id.*, at 623-24. Further, in both cases plaintiffs maintain that they had no option but to pay the price increases (Dkt. No. 17, ¶ 32). *Id.*

The United States Court of Appeals for the Eighth Circuit, in reversing the district court's dismissal of the breach-of-contract claim in Pietoso's complaint, stated:

> Even assuming that there are cases where the consent-by-conduct question can be resolved at the pleading stage, this is not one of them. In light of Pietoso's allegations, the relevant circumstances here do not give rise to the "necessary deduction" that Pietoso consented to Optional Reason increases solely by its actions and practices of faithfully paying the invoices. *See Maples*, 686 S.W.2d at 527. Under the Agreement, Defendants had the right to increase the basic-service rate for a Unilateral Reason without Pietoso's consent, and Pietoso had to pay such increases or else breach the Agreement. Defendants also could increase the basic-service rate for an Optional Reason, but only with Pietoso's consent, and Pietoso could refuse to pay such an increase without contractual consequence. According to Pietoso, the invoiced increases were always presented as Unilateral Reason increases, which is why it paid them without dispute for approximately eight years. In these circumstances and at this stage of the litigation, Pietoso's faithful payment of the increases does not conclusively show anything more than that Pietoso complied with its contractual obligations. *See Zumwinkel*, 345 S.W.2d at 95 (noting that actions that are "consistent either with the continued existence of the original contract, or with a modification thereof," do not suffice to show consent to a modification).
>
> Drawing reasonable inferences in Pietoso's favor, as we must at this stage, bolsters this point. *See Trone Health Servs.*, 974 F.3d at 850. It is "common sense" that "people are not inclined knowingly to consent to being economically gouged." *Paolella v. Browning-Ferris, Inc.*, 973 F. Supp. 508, 514 (E.D. Pa. 1997), *aff'd*, 158 F.3d 183 (3d Cir. 1998). Because Pietoso could refuse to pay an Optional Reason increase without contractual consequence, it defies common sense to view its actions and practices of faithfully paying the invoices as an unambiguous

>   manifestation of its consent to pay more voluntarily for the services it was receiving and would continue to receive under the Agreement. The more reasonable inference in the circumstances alleged here is that Pietoso paid the increases simply because, by all appearances, it had no choice but to do so.

*Pietoso*, 4 F.4th at 623–24.

BFI contends that *Pietoso* is distinguishable because Missouri law applied in that case. Bryce Brewer argues, however, that the application of Arkansas law yields the same result. Bryce Brewer asserts that, under Arkansas law like Missouri law, whether a contract has been modified by consent is a question of fact (Dkt. No. 77, at 7 (citing *Luningham v. Ark. Poultry Fed'n. Ins. Tr.*, 922 S.W.2d 1, 4 (Ark. Ct. App. 1996)). *See Wal-Mart Stores Inc. v. Coughlin*, 255 S.W.3d 424, 434 (Ark. 2007); *Linda Elenia Askew Trust v. Hopkins*, 688 S.W.2d 316, 318 (Ark. Ct. App. 1985) (whether there is an oral modification to the terms of a contract is a question of fact for the jury).

BFI further argues that *Pietoso* is distinguishable because Bryce Brewer's theory of breach is materially different from the theory raised in *Pietoso*. BFI asserts that Bryce Brewer's theory of breach is based on a rate increase implemented to adjust for increases in CPI, which it terms a "unilateral reason" (Dkt. No. 81, at 3). BFI argues that, "[a]s a matter of law, Plaintiff is wrong that a rate increase that exceeds the increases in CPI automatically violates the contract." (*Id.*, at 4). BFI contends that, "[t]o dismiss the complaint, the Court need not find that consent ***occurred*** as a matter of law; in this case, unlike in *Pietoso*, it is enough that consent is ***possible*** as a matter of law." (*Id.*, at 4). BFI maintains that "various rate increase provisions are independent, so any of them (alone or in combination) can justify a rate increase." (*Id.*). According to BFI, "a rate increase authorized by any provision is authorized and cannot support a breach of contract claim" (*Id.*).

10

In its surreply, Bryce Brewer contends that multiple courts have rejected BFI's consent argument, and Bryce Brewer argues that BFI's attempt to distinguish *Pietoso* fails (Dkt. No. 85, at 2-4).  According to Bryce Brewer, the issue before the United States Court of Appeals for the Eighth Circuit was whether, by dutifully paying the rate increases, a party consents to the rate increases (*Id.*).  Bryce Brewer asserts that the Eighth Circuit Court of Appeals stated unequivocally that, at least on a motion to dismiss, a court cannot find that a party consented to BFI's rate increases by paying them (*Id.*).  The same rate increases are at issue in both this case and in the *Pietoso* case.  According to Bryce Brewer, other courts have reached a similar result (*Id.*, at 4 (citing Dkt. No. 77, at 7)).  In *New Merkle Investors, LLC v. Republic Services, Inc.*, Cir. Ct. Jefferson Cty. Alabama, Case No. CV-2021-903302.00, like here, BFI asserted that New Merkle consented to rate increases when it continued to pay its invoices over the years (Dkt. No. 77-2, at 4).  The Court concluded that "[f]act discovery and further litigation is necessary to determine if BFI's rate increases breached the Agreement" and denied BFI's motion to dismiss New Merkle's breach of contract claim (*Id.*, at 4-5).

In the operative complaint, Bryce Brewer alleges that the specific rate increases imposed on Bryce Brewer were "mandatory CPI increases and not increases to which customers can consent" (Dkt. No. 17, ¶ 30).  Further, in the operative complaint, Bryce Brewer asserts that it is challenging the rate increases that it "had no choice but to accept under the terms of the contract." (*Id.*, ¶ 32).  According to the operative complaint, if customers like Bryce Brewer did not pay the invoiced charges, BFI would aggressively enforce the contract seeking future due amounts and attorney's fees (*Id.*).

Assuming the facts set forth in the operative complaint are true and construing those facts in the light most favorable to Bryce Brewer, the Court concludes based on the record before it at

this stage in the litigation that Bryce Brewer has stated a breach of contract claim against BFI under the Customer Service Agreement. Accordingly, the Court denies BFI's motion to dismiss Bryce Brewer's operative complaint (Dkt. No. 21).

### 3.    Necessity Of RSI As A Party Defendant

In BFI's reply brief in support of its motion to dismiss, BFI asserts that because Bryce Brewer dismissed RSI and RSAG as defendants and because Bryce Brewer "relies on the blanket term 'Republic' in its operative complaint to refer to 'RSI, RSAG, and BFI together'" and does not specify anything BFI does with rates, BFI argues that Bryce Brewer's breach of contract claim must be dismissed because RSI "designed, implemented, charged, and collected the rate increases" (Dkt. No. 81, at 1-3). BFI suggests that Bryce Brewer should have requested leave to amend its operative complaint if it wanted to change its theory, and it cannot merely substitute BFI for RSI throughout the operative compliant (*Id.*, at 2). Bryce Brewer asserts that it sufficiently pled allegations of breach of contract in its complaint against BFI because it made clear that every factual allegation made against RSI is also made against BFI (Dkt. No. 85, at 6). Alternatively, Bryce Brewer contends that it stated sufficient allegations to assert that BFI may be held liable for any actions by RSI as its alter-ego (*Id.*, at 7).

As a threshold matter, this case presents a choice of law question that the parties did not brief. In this case is it Arkansas substantive law or the substantive law of Delaware, the state where RSI and BFI were incorporated, that applies? Even though the parties have not briefed the issue, the Court concludes that Bryce Brewer has met its burden no matter which state's law should apply to the alter-ego inquiry.

In *Black & White, Inc. v. Love*, 367 S.W.2d 427 (Ark. 1963), the Arkansas Supreme Court reasoned that piercing Black & White's corporate veil was appropriate because it and Checker

Cab, a formally separate corporation, "were owned by the same stockholders, operated by the same officers, and the[ir] cabs were interchanged." 367 S.W.2d 427, 432. Thus, it would have been "putting fiction above right and justice to allow Black & White to hide behind the corporate entity of Checker" to avoid liability. *Id*. After *Black & White*, Arkansas courts have consistently applied the alter-ego doctrine "when the facts warrant its application to prevent an injustice." *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. Ct. App. 1981); *see also Woodyard v. Ark. Diversified Ins. Co.*, 594 S.W.2d 13, 17 (Ark. 1980) (ignoring the corporate form is appropriate where "it is necessary to prevent wrongdoing"). While some cases have stated that the doctrine is applicable "only if the corporate structure is illegally or fraudulently abused," *Thomas v. Southside Contractors, Inc.*, 543 S.W.2d 917, 919 (Ark. 1976), the Arkansas Supreme Court has rejected the proposition that this requires a specific finding that a corporation is "being used to promote fraud." *Ark. Bank & Trust Co. v. Douglass*, 885 S.W.2d 863, 870 (Ark. 1994). Instead, the corporate form can be disregarded when it is "essentially being used to avoid the effects of the statutes in issue" and allowing corporations "to do indirectly what they could not do directly." *Id.*; *see also Gordon v. Aztec Brewing Co.*, 33 Cal.2d 514, 523 (1949) ("It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice.").

Similarly, under Delaware law, "[t]o prevail under the alter-ego theory of piercing the veil, a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an 'overall element of injustice or unfairness.'" *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.,* Case No. CIV. A. 1331, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)).

Bryce Brewer alleged in its operative complaint that BFI, RSI, and RSAGI operate as a single organization regarding the conduct at issue in the lawsuit, that BFI and RSI share a management structure and financial accounting, that any legal fiction between them is a fiction designed to limit liability, and that both were directly involved in and responsible for the conduct alleged in the operative complaint (Dkt. No. 17, ¶¶ 11-12).  RSI, when moving to be dismissed from this lawsuit, indicated that BFI is the relevant party (Dkt. No. 24).  Specifically, RSI noted that "RSI did not set Bryce Brewer's rates—RSI's co-defendant [BFI] did." (Dkt. No. 24, at 2).  RSI further claimed that BFI "is responsible for managing its own operations and billing customers" and that "Bryce Brewer and BFI entered into a Customer Service Agreement . . ." (*Id*, at 4).

Bryce Brewer has, through its allegations in the operative complaint, satisfied both Arkansas and Delaware's standard for asserting an alter-ego theory to permit it to move forward with its claim against BFI at this stage in the proceedings.  *See Int'l Ass'n of Bridge v. Acme Erectors, Inc*., Case No. 16-0488-CV-W-REL, 2016 WL 6089748, at *3 (W.D. Mo. Oct. 17, 2016); *see also Buffalo Seafood House LLC, et al. v. Republic Services, Inc., et al*., Case No. 7:22-cv-1242-RMG (D. S.C. Mar. 14, 2023) (applying finding that "Plaintiffs have sufficiently alleged that [Republic Services of South Carolina LLC is an alter-ego of RSI for Buffalo Seafood [House, Inc.'s] claims to survive dismissal.").

### III.   Conclusion

For the reasons set forth in this Order, the Court denies without prejudice BFI's motion for entry of judgment or, in the alternative, for conditions upon Bryce Brewer's voluntary dismissal (Dkt. No. 18).  The Court denies BFI's motion to dismiss Bryce Brewer's amended complaint (Dkt. No. 21).

So ordered this 29th day of September, 2023.

                                                   */s/ Kristine G. Baker*
                                                   Kristine G. Baker
                                                   United States District Judge